```
            IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                     DIVISION OF ST. CROIX

TIMOTHY M. FLANNERY, et al.       :          CIVIL ACTION
                                  :
            v.                    :
                                  :
THERMASTEEL CORPORATION,          :
INC., d/b/a THERMASTEEL           :          NO. 13-38
```

<u>MEMORANDUM</u>

Bartle, J.                                     August 25, 2016

          Plaintiffs Timothy Flannery ("Flannery") and Linda Morse

("Morse"), citizens of the territory of the United States Virgin

Islands, have filed this diversity action against ThermaSteel

Corporation, Inc. ("ThermaSteel"), a Virginia corporation.  Their

two-count complaint alleges negligence and breach of express and

implied warranties in connection with products manufactured by

ThermaSteel and used in the construction of their new residence on

St. Croix.

          Before the court is the motion of ThermaSteel to dismiss

the complaint for lack of personal jurisdiction pursuant to Rule

12(b)(2) of the Federal Rules of Civil Procedure and for failure to

state a claim pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  In its motion ThermaSteel also asks us in the

alternative to stay the proceedings pending arbitration pursuant to

the Federal Arbitration Act, 9 U.S.C. § 2.  We ordered supplemental

discovery and briefing on the issue of personal jurisdiction.  That

briefing is now complete and the motion is therefore ripe for our

review.  Plaintiffs have also filed:  (1) a motion to strike one of the exhibits to ThermaSteel's motion to dismiss; and (2) a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

I.

When a defendant moves for dismissal under Rule 12(b)(2), the plaintiff bears the burden of "prov[ing], by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Cateret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992); See also Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007).  A Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings." Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  Thus, the plaintiff cannot "rely on the bare pleadings alone in order to withstand the defendant's Rule 12(b)(2) motion" and must instead "respond with actual proofs, not mere allegations." Id.  These proofs may take the form of "affidavits or other competent evidence that jurisdiction is proper." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (quoting Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)).

Rule 4(k) of the Federal Rules of Civil Procedure permits a federal district court under certain circumstances to assert personal jurisdiction over a defendant who does not

reside in that district.  In relevant part, the Rule provides as follows:

> (1)  Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
>
>> (A)  who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located [or]
>>
>> . . .
>>
>> (C)  when authorized by a federal statute.

Fed. R. Civ. P. 4(k)(1).

In effect, Part (k)(1)(A) of Rule 4 authorizes federal district courts to assert personal jurisdiction over nonresidents of the state in which the court sits to the extent authorized by the law of that state.  Fed. R. Civ. P. 4(k)(1)(A); Marten, 499 F.3d at 296 (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)); see also, e.g., Yusuf v. Adams, No. 03-76, 2004 WL 3178044, at *2 (D.V.I. Nov. 9, 2004).  In the Virgin Islands, "[e]stablishing personal jurisdiction . . . involves a two-part analysis.  First, there must be a statutory basis for exercising jurisdiction over the nonresident defendant in accordance with the Virgin Islands Long-Arm Statute . . . , and second, the nonresident defendant must have minimum contacts with the Virgin

-3-

Islands sufficient to satisfy constitutional due process."

Metcalfe, 566 F.3d at 330.

The Long-Arm Statute of the Virgin Islands provides in relevant part:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
>
> > (1) transacting any business in this territory;
> >
> > (2) contracting to supply services or things in this territory; [or]
> >
> > . . .
> >
> > (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory[.]
> >
> > . . .
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

5 V.I. Code tit. 5, § 4903.

The term "transacting any business" as used in subsection (a)(1) of the Long-Arm Statute "is a term that connotes activity that is less than doing business, but more than an inconsequential act."  Metcalfe, 566 F.3d at 332

-4-

(quoting In re Kelvin Manbodh Asbestos Litig. Series, 47 V.I.
276, 283 (V.I. Super. Ct. 2005))  Subsection (a)(2), meanwhile,
requires only "that the contract be performed, at least in part,
in the Virgin Islands and that the cause of action arise out of
the contract."  Metcalfe, 566 F.3d at 332.  Finally, subsection
(a)(4) accounts for the opposite situation.  For jurisdiction to
be proper under subsection (a)(4),

> [f]irst, there must be an act or omission
> done outside the Virgin Islands, causing
> injury in the Virgin Islands.  Second, the
> person causing the injury must either
> regularly do business in the Virgin Islands,
> engage in a persistent course of conduct in
> the Virgin Islands or derive substantial
> revenue from goods used or services rendered

in the Virgin Islands.  Club St. Croix Homeowners Ass'n, Inc. v.
Shell Oil Co., No. 03-181, 2007 WL 4800358, at *3 (D.V.I.
Nov. 30, 2007).

As explained above, if we are to exercise personal
jurisdiction, the "nonresident defendant must [also] have
minimum contacts with the Virgin Islands sufficient to satisfy
constitutional due process."  Metcalfe, 566 F.3d at 330.  Under
the Due Process Clause, we may exercise personal jurisdiction
only over defendants who have "certain minimum contacts . . .
such that the maintenance of the suit does not offend
traditional notions of fair play and substantial justice."
Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal

quotation omitted).  A parallel inquiry is whether the
defendant's contacts with the forum state are such that the
defendant "should reasonably anticipate being haled into court
there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286,
297 (1980).

These principles of due process give rise to two
recognized categories of personal jurisdiction.  The first
category, general jurisdiction, "exists when a defendant has
maintained systematic and continuous contacts with the forum
state."  Marten, 499 F.3d at 296 (citing Helicopteros Nacionales
de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.8 (1984)).
Specific jurisdiction, in contrast, "exists when the claim
arises from or relates to conduct purposely directed at the
forum state."  Id. (citation omitted).  The specific
jurisdiction analysis "depends on the relationship between the
claims and contacts," and thus specific jurisdiction
determinations must be made on a claim-by-claim basis.  Id.
(citation omitted); see also Remick v. Manfredy, 238 F.3d 248,
255 (3d Cir. 2001).

In general, a district court analyzing its specific
jurisdiction over a particular claim must conduct a three-part
inquiry.  Marten, 499 F.3d 296 (citing O'Connor v. Sandy Lane
Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007)).  First, the
court asks whether the defendant "purposefully directed his

-6-

activities at the forum." Id. (internal citation omitted).
Second, the court determines whether the plaintiff's claim
"arise[s] out of or relate[s] to at least one of those specific
activities." Id. (internal citation omitted).  Third, and
finally, "courts may consider additional factors to ensure that
the assertion of jurisdiction otherwise comport[s] with fair
play and substantial justice." Id. (internal citation omitted).
This "traditional" test of specific jurisdiction, and
specifically its "purposeful direction" prong, is closely linked
to a defendant's minimum contacts with a forum and whether these
contacts are sufficient to make the exercise of jurisdiction
consistent with due process.  See id. at 297; see also Imo
Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).

       Plaintiffs have proven the following facts by a
preponderance of the evidence.  See Cateret Sav. Bank, FA, 954
F.2d at 146.

       In February 2007, ThermaSteel entered into an agreement
entitled "ThermaSteel Distributor Agreement" (the "Distributor
Agreement") with a company called Vestindien Development Group,
Inc. ("Vestendien").  ThermaSteel does not dispute that
Vestindien was the predecessor to All Rounder Systems, LLC
("ARS"), a construction company with offices in the Virgin
Islands.  The Distributor Agreement appointed Vestendien "to
serve as an appointed ThermaSteel Distributor for the company's

-7-

products."  Among other things, the Distributor Agreement: granted the distributor the right to use its trade names and trademarks, and required it to do so; permitted ThermaSteel to "provide technical and sales training . . . at its own discretion," provided for the distributor's compensation, and required the distributor to satisfy an annual sales quota.  The agreement also obliged the distributor to furnish technical assistance on projects employing ThermaSteel projects, including providing "instruction in assembly techniques required for a person to properly erect the Distributor's ThermaSteel panels." The distributor was also obligated to notify ThermaSteel in writing of all customer complaints.  The agreement emphasized that the distributor was an independent contractor an "not an agent, employee, partner, or joint venture" of ThermaSteel.

In 2009, 2011, 2012, and 2013, representatives of ThermaSteel and ARS signed agreements which were styled as addenda to the Distributor Agreement.  Those addenda identified ARS as "successor by assignment of rights from Vestindien Development Group, Inc."[1]  Among other things, each addendum acknowledged that "ThermaSteel Corporation has agreed to extend the exclusive granted to All Rounder Systems, LLC for the United States Virgin Islands . . . for an additional year."  All other

---

1.  Exactly when ARS became the successor to Vestindien is not clear.

terms of the previous agreements between the parties "remain[ed] in full force and effect."

In or about early 2010, plaintiffs undertook to have a new home constructed on St. Croix.  On the recommendation of their architect, plaintiff Flannery visited ThermaSteel's website and, after reviewing it, "felt that the Thermasteel product was perfect to use in [plaintiffs'] home."  Plaintiffs' architect then advised Flannery to visit the website of ARS, which he did.  The website featured a "link to Thermasteel . . . and in addition ARS identified themselves as a Distributor of the Thermasteel product."  Convinced that ThermaSteel's product was the best option for their purposes, plaintiffs secured funding and demolished their existing home "to make way for the new home to be built with Thermasteel."

Plaintiffs thereafter entered into a Construction Management Agreement with ARS.  That agreement set forth the terms and conditions controlling the construction of plaintiffs' new residence.  The agreement referenced ThermaSteel, emphasizing that plaintiffs "are committed to value engineering principles which will include the use of ThermaSteel® structural insulated panels and other efficiency enhancing construction techniques which ARS has successfully used in" the Virgin Islands.  The agreement also specified that insulated panels

-9-

manufactured by ThermaSteel were to be used in certain portions of the residence.

The extent of plaintiffs' communications with representatives of ThermaSteel is not entirely clear. Plaintiffs have demonstrated, however, that they exchanged emails with ThermaSteel representatives and spoke with the company's employees by telephone.[2]  Among other things, Flannery states in an affidavit that in October 2011 he spoke by telephone with ThermaSteel's General Manager, Don Henshew ("Henshew").  According to Flannery, Henshew told him "that he had been working with Peter Sites of ARS for a long time and had no issues with Peter before. . . . I recall . . . Henshew ending our conversation by saying that he was going to call Peter and find out what was going on."

Plaintiffs have also directed our attention to email exchanges in which representatives of ARS and representatives of ThermaSteel discussed the progress of construction on plaintiffs' home and addressed the problems plaintiffs had encountered in using ThermaSteel's products.  For example, in

---

2.  The evidence offered by plaintiffs sheds little light on where exactly these employees were located when they sent emails to plaintiffs and to ARS representatives and when they communicated with plaintiffs by telephone.  However, the "signature line" that appears on the emails sent by the ThermaSteel employees represents their mailing addresses as "ThermaSteel Corporation, 609 West Roack Road, Radford, VA[] 24141 USA."

several email exchanges ARS employees forwarded construction drawings to employees of ThermaSteel.  At one point, a ThermaSteel employee responded:  "Finally getting started on your project and I'm having a hard time working through the drawings you sent. . . . Can you send me a full set of drawings in PDF format?"  On another occasion, an ARS representative asked a ThermaSteel employee to contact plaintiffs' architect "with a list of what you need."  And in May 2011, ThermaSteel's Drafting Manager wrote to an ARS employee:

> Attached you should find the design drawings for the Flannery Morse Villa project and a Design Approval Letter.  Please, review the drawings in their entirety . . . if the drawings suit your specifications please print, sign and date the attached Design Approval Letter and send it back to ThermaSteel via mail, fax or scan and email. After the receipt of the signed approval letter I move the project on to the final stage of drafting.  [Sic.]

He later followed up with ARS employees to "check in with you on the Flannery Morse Villa project."  These excerpts are just several of many examples of communications between ThermaSteel and ARS about the project.

Plaintiffs have "prove[n], by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." See Cateret Sav. Bank, FA, 954 F.2d at 146.  First, the competent evidence submitted by plaintiffs establishes by a preponderance of the evidence that there is a statutory basis

-11-

for our exercise of personal jurisdiction in accordance with the Virgin Islands Long-Arm Statute.  See Metcalfe, 566 F.3d at 330. As noted above, that statutes permits us to exercise personal jurisdiction over a claim arising from a defendant's "transacting any business in" the Virgin Islands.  5 V.I. Code tit. 5, § 4903(a)(1).  Even acts that fall short of "doing business" satisfy this standard as long as they are "more than . . . inconsequential."  Metcalfe, 566 F.3d at 332.  We are completely unpersuaded by ThermaSteel's argument that it did not "transact any business" in the Virgin Islands when it entered into numerous agreements continuing its designation of ARS as its exclusive distributor in the Virgin Islands.  Even if we were to accept this unsupported line of reasoning,[3] ThermaSteel "transact[ed] business" in the Virgin Islands by undertaking concerted efforts to assist in ARS's design and construction of plaintiffs' home.  Moreover, plaintiffs' claims for relief "aris[e] from" these acts by ThermaSteel because were it not for ThermaSteel's role in the construction of the house by ARS, plaintiffs would have no cause of action against ThermaSteel. In sum, we have personal jurisdiction under § 4903(a)(1).

---

3.  ThermaSteel insists that subsection (a)(1) is "of no avail because Plaintiffs have not pleaded or factually supported any claim for breach of contract or for breach of warranty."  But one does not follow from the other.  Whether plaintiffs have adequately pleaded a claim may be relevant to defendants' 12(b)(6) motion, but in this case it does not support their 12(b)(2) argument.

-12-

The same logic applies with respect to § 4903(a)(2), which allows us to exercise jurisdiction over a defendant regarding a claim arising from its "contracting to supply services or things in" the Virgin Islands.  ThermaSteel did precisely that when it entered into a Distributorship Agreement with ARS's predecessor and then continued that agreement with ARS.  Plaintiffs have proven that the distributorship agreement was "performed, at least in part, in the Virgin Islands."  See Metcalfe, 566 F.3d at 332.  Again, their claims are closely related to ThermaSteel's involvement with ARS.  See id.

Section 4903(a)(4), as noted above, permits us to exercise personal jurisdiction over a party as to a claim for relief arising out of "an act or omission done outside the Virgin Islands, causing injury in the Virgin Islands" where the party causing the injury either "regularly do[es] business in the Virgin Islands, engage[s] in a persistent course of conduct in the Virgin Islands or derive[s] substantial revenue from . . . services rendered" in the Virgin Islands.  Club St. Croix Homeowners Ass'n, Inc., No. 03-181, 2007 WL 4800358, at *3; see also 5 V.I. Code tit. 5, § 4903(a)(4).  There can be no question that ThermaSteel at least engaged "in a persistent course of conduct in the Virgin Islands."  See Club St. Croix Homeowners Ass'n, Inc., No. 03-181, 2007 WL 4800358, at *3.

-13-

For the foregoing reasons, we conclude that plaintiffs have proven by a preponderance of the evidence that our exercise of personal jurisdiction over ThermaSteel is proper pursuant to the Virgin Islands Long-Arm Statute.  See Cateret Sav. Bank, FA, 954 F.2d at 146.  Consequently, our next task is to determine whether ThermaSteel has "minimum contacts with the Virgin Islands sufficient to satisfy constitutional due process."  See Metcalfe, 566 F.3d at 330.

As we have explained, the principles of due process permit us to exercise general jurisdiction over a defendant who "has maintained systematic and continuous contacts with the forum state."  See Marten, 499 F.3d at 296 (citing Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414-15 & n.8).  In our view, plaintiffs have proven by a preponderance of the evidence that these "systemic and continuous contacts" exist between ThermaSteel and the Virgin Islands.

Even if we were to decline to exercise general jurisdiction, however, our exercise of specific jurisdiction in this matter would be proper, because plaintiffs' claims against ThermaSteel relate to conduct of ThermaSteel that was "purposely directed at the" Virgin Islands.  See id.  ThermaSteel knowingly and deliberately entered into and continued a Distributor Agreement with ARS, making ARS its exclusive distributor in the Virgin Islands.  It was this arrangement between ThermaSteel and

-14-

ARS that led plaintiffs to identify and contact ARS about
constructing their residence.  Furthermore, representatives of
ThermaSteel played an active role in the design and construction
of plaintiffs' house, which, as ThermaSteel was aware, was
located in the Virgin Islands.  Among other things, ThermaSteel
employees drafted reviewed design documents and communicated
directly with plaintiffs' architect.  It was the involvement of
ThermaSteel in the construction project that gave rise to the
claims before us.  While we may also consider "additional
factors to ensure that the assertion of jurisdiction otherwise
comport[s] with fair play and substantial justice," those
factors compel us to exercise our jurisdiction here.  See id.
Plaintiffs have proven by a preponderance of the evidence that
ThermaSteel played a central role in the events at issue here,
and it cannot plausibly argue that it should not "reasonably
[have] anticipate[d] being haled into court" simply because
plaintiffs entered into a contract with ThermaSteel's exclusive
distributor and not with ThermaSteel itself.  See World-Wide
Volkswagen Corp., 444 U.S. at 297; Marten, 499 F.3d at 296.

        We are mindful that our specific jurisdiction analysis
must be made on a claim-by-claim basis.  See Marten, 499 F.3d at
296.  As explained above, plaintiffs' complaint contains two
counts:  a negligence claim and a claim asserting breach of
express and implied warranties.  Both of these claims relate to

-15-

ThermaSteel's relationship with ARS and to its involvement in the construction of plaintiffs' house.  Those acts by ThermaSteel were "purposefully directed" at the Virgin Islands. Again, no "additional factors" change our analysis as to either claim.  Our exercise of specific personal jurisdiction comports with due process as to both of plaintiffs' claims.

Since plaintiffs have proven facts sufficient to establish personal jurisdiction by a preponderance of the evidence, we will exercise personal jurisdiction over ThermaSteel.  See Cateret Sav. Bank, FA, 954 F.2d at 146. ThermaSteel's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) will be denied.

II.

Having determined that the court has personal jurisdiction over ThermaSteel, we now turn to ThermaSteel's argument that the complaint must be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

When ruling on a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff.  Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Although we have summarized some of the factual background in assessing ThermaSteel's Rule 12(b)(2) motion, it is appropriate at this stage to set forth the allegations pleaded in the complaint in further detail.  Those facts, taken in the light most favorable to plaintiffs, are as follows.

Plaintiffs Flannery and Morse purchased a plot of land on St. Croix with the goal of building a new residence thereon.  They "stud[ied] the literature" and concluded that it would be to their advantage to construct their new home using products manufactured by ThermaSteel.  Accordingly, they contacted ThermaSteel "for further information," at which point ThermaSteel "directed the Plaintiffs to their exclusive agent in the U.S. Virgin Islands," ARS.  ThermaSteel represented that ARS was its sole distributor in the Territory and "acknowledged that ARS was its exclusive agent, distributor, contractor and/or installer."  ThermaSteel assured plaintiffs that ARS possessed the skill to install ThermaSteel's products.  Plaintiffs allege that at all relevant times, ARS "was the actual and/or apparent agent of" ThermaSteel and that agents of ARS represented themselves as such.

Based on these representations, plaintiffs contacted ARS about their proposed construction project.  They allege that ThermaSteel "and/or their agent ARS" offered to carry out the project using plans that included materials manufactured by ThermaSteel for a total cost of $814,250 including labor and

-17-

materials.  ThermaSteel "and/or" ARS warranted the workmanship on the project.  Ultimately, plaintiffs decided to hire ARS to construct their new home.

According to plaintiffs, ThermaSteel "and/or" ARS failed properly to construct the house.  In addition, plaintiffs allege that one or both of the companies failed to:  provide engineering drawings or competent architectural drawings; complete the project within one year or furnish labor to do so; conform to the architectural plans; comply with building codes or manufacturer recommendations; comply with "proper hurricane rated building standards"; properly construct a foundation; properly install the ThermaSteel products; install hurricane straps or cross-bracing; or properly install pre-hung doors.  They further contend that one or both of the companies "ultimately failed to properly construct the structure."  In addition, they aver that ThermaSteel "and/or its agent ARS failed to utilize sound methodology when installing" ThermaSteel's products and materials.  According to plaintiffs, these deficiencies, particularly the failure to adhere to local building codes and industry standards, have "compromised the integrity of the structure."  Consequently, plaintiffs "have been damaged."

Plaintiffs also plead that the ThermaSteel products were not merchantable at the time of sale, notwithstanding the express and implied warranties made to them by ThermaSteel.  In addition,

-18-

they plead that ThermaSteel expressly and impliedly warranted the construction and installation expertise of ARS and that these warranties were breached.  Due to these breaches, plaintiffs assert, they "have been damaged."  In their complaint, plaintiffs ask the court to award "economic and non-economic damages" in their favor.

In its Rule 12(b)(6) motion, ThermaSteel contends that the complaint must be dismissed because plaintiffs' claims are barred by the doctrine of economic loss.  That doctrine, which has been adopted by the Virgin Islands, "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."  Whitecap Inv. Corp. v. Putnam Lumber & Export Co., No. 10-139, 2013 WL 1155241, at *2 (D.V.I. Mar. 21, 2013)(quoting Ringo v. Southland Gaming of the U.S.V.I., Inc., No. ST-10-CV-116, 2010 WL 7746074, at *6 (V.I. Super. Ct. Sept. 22, 2010)).  Under the rule, plaintiffs cannot "su[e] or recover[] in tort for economic or pecuniary losses that arise only from breach of contract or are associated with the contract relationship."  Turnbull v. Univ. of V.I., No. ST-07-CV-239, 2016 WL 1947893, at *5 (V.I. Super. Ct. Mar. 2, 2016).

The economic-loss doctrine thus "eliminates any duty of [a] manufacturer 'under either a negligence or strict products-liability theory to prevent a product from injuring itself.'"  Whitecap Inv. Corp., No. 10-139, 2013 WL 1155241, at *3

(quoting <u>Aloe Coal Co. v. Clark Equip. Co.</u>, 816 F.2d 110, 118

(3d Cir. 1987)).  Put differently,

> a plaintiff proceeding on a tort claim for
> product defect may not recover the loss of
> value or use of the product itself, cost to
> repair or replace the product, or the lost
> profits resulting from the loss o[f] use of the
> product.  Instead, a plaintiff can only recover
> in tort for personal injury or damage to "other
> property."

<u>Id.</u> (citations omitted).

As this court has observed, the Third Restatement of Torts

sheds some light on the distinction between "the product itself" and

"other property" by explaining that plaintiffs who bring

products-liability claims may only recover loss "caused by harm to

(a) the plaintiff's person; (b) the person of another . . . ; or

(c) the plaintiff's property other than the defective product

itself."  <u>Id.</u> (quoting Restatement (Third) of Torts § 21 (2012)).

Items added to the product itself by the product's user constitute

"other property" for these purposes.  <u>Id.</u> (citing <u>East River S.S.

Corp. v. Transamerica Delaval, Inc.</u>, 476 U.S. 858, 871 (1986)).

Recently, this court recognized that Virgin Islands courts

had not yet addressed the issue of "whether an express contractual

relationship must exist between the plaintiff and the defendant in

order for the economic-loss doctrine to apply."  <u>Id.</u>  It predicted

that the Virgin Islands Supreme Court would not make such privity of

contract between the parties a prerequisite to the application of
the doctrine of economic loss.   Id.

        We note at the outset that plaintiffs, in their complaint,
do not merely plead that ThermaSteel's products were defective.
While the quality of the materials they purchased does appear to
form the basis for some of their allegations,[4] plaintiffs seem to be
asserting that ThermaSteel's liability arises out of its involvement
in the design and construction processes.   In their negligence
claim, plaintiffs plead that ThermaSteel breached its duties to
ensure that ARS was competent to build the home and to properly
oversee the design and construction.   They also claim that
ThermaSteel "and/or" ARS negligently designed and constructed the
home.   Meanwhile, plaintiffs' claim for breach of express and
implied warranties includes allegations that ThermaSteel improperly
warranted the abilities of ARS, as well as its own ability to
provide support in the construction process.

        We first assess the applicability of the economic-loss
doctrine to plaintiff's negligence claim.   As explained above, it is
true that the doctrine operates to bar plaintiffs from recovering in
negligence for "losses to which their entitlement flows only from a
contract."   Whitecap Inv. Corp., No. 10-139, 2013 WL 1155241, at *2.
In the product-liability context, this bars negligence recovery for

_____

4.   For example, plaintiffs contend in their breach-of-warranty
claim that "[t]he THERMASTEEL products and materials were not
merchantable at the time of sale."

any "loss of value or use of [a] product itself, cost to repair or replace the product, or" lost profits.  Id.  The extent to which plaintiffs' negligence claim is based on alleged deficiencies in the ThermaSteel product is not entirely apparent.  Indeed, it is not clear that the negligence claim is based on such deficiencies at all.  To the extent that plaintiffs' negligence claim alleges "the loss of value or use of the [ThermaSteel] product itself, cost to repair or replace the product, or the lost profits resulting from the loss o[f] use of the product," it must be dismissed on the ground that it is barred by the doctrine of economic loss.  See id. To the extent that it alleges damage to "other property" as a result of any failure of ThermaSteel products, the claim will be permitted to proceed.

However, we read plaintiffs' negligence claim to arise primarily, if not exclusively, out of ThermaSteel's involvement in the design and construction of the residence.  It appears to be ThermaSteel's position that the claim is nevertheless barred by the economic-loss doctrine because it is associated with a contractual relationship, that is the Construction Management Agreement between ARS and plaintiffs.[5]  ThermaSteel is mistaken.  Insofar as it is based on ThermaSteel's involvement in the design and construction processes, plaintiffs' negligence claim does not "arise only from

---

5.  We remind the reader that ThermaSteel was not a party to the Construction Management Agreement.

breach of contract." See Turnbull, No. ST-07-CV-239, 2016 WL 1947893, at *5. While a similar negligence claim against ARS might be precluded by the economic-loss doctrine, plaintiffs' entitlement to economic losses from ThermaSteel does not "flow only from a contract." See Whitecap Inv. Corp., No. 10-139, 2013 WL 1155241, at *2. Consequently, insofar as it pleads liability based on ThermaSteel's involvement in the design and construction processes, plaintiffs' negligence claim will be permitted to go forward.

This brings us to plaintiffs' claim for breach of express and implied warranties. ThermaSteel argues that the doctrine of economic loss mandates dismissal of this claim. However, the doctrine has consistently been held to bar recovery in tort. See, e.g., Whitecap, No. 10-139, 2013 WL 1155241, at *2; Turnbull, No. ST-07-CV-239, 2016 WL 1947893, at *5; Ringo, No. ST-10-CV-116, 2010 WL 7746074, at *6. Plaintiffs' warranty claim does not sound in tort, and ThermaSteel has not directed our attention to any case in which the economic-loss doctrine has been held to bar a claim for breach of warranty. We will decline ThermaSteel's request for dismissal of the breach-of-warranty claim under the doctrine of economic loss.

In addition to its reliance on the doctrine of economic loss, ThermaSteel urges that plaintiffs have failed to state a claim for negligence or for breach of warranty. We are not persuaded. Plaintiffs' complaint "contain[s] sufficient factual matter . . .

-23-

to 'state a claim for relief that is plausible on its face.'"
See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Whether or not
their claims have merit must await another day.

III.

ThermaSteel contends that in the event we deny its Rule
12(b)(2) and 12(b)(6) motions, we should stay the proceedings and
compel plaintiffs to submit to arbitration pursuant to the Federal
Arbitration Act ("FAA"), 9 U.S.C. § 2.[6]  In support of this argument,
ThermaSteel points to the following provision in the Construction
Management Agreement between plaintiffs and ARS:

> In the event there are disputes between ARS and
> Owners, or Owners' assignee, both sides agree
> to work together in good faith to resolve their
> differences.  In the event such differences
> cannot be resolved then all such matters shall
> be subject to mandatory and binding arbitration
> before a mutually agreeable arbitrator who
> shall be a licensed attorney on the island
> where the Project is located.  If the parties

---

6.  9 U.S.C. § 2 provides as follows:

> A written provision in any maritime
> transaction or a contract evidencing a
> transaction involving commerce to settle by
> arbitration a controversy thereafter arising
> out of such contract or transaction, or the
> refusal to perform the whole or any part
> thereof, or an agreement in writing to
> submit to arbitration an existing
> controversy arising out of such a contract,
> transaction, or refusal, shall be valid,
> irrevocable, and enforceable, save upon such
> grounds as exist at law or in equity for the
> revocation of any contract.

-24-

> cannot agree on an arbitrator within ten (10)
> business days then the arbitrator shall be
> appointed by the Court. . . . The arbitration
> award shall be enforceable in any state,
> federal, or other court of competent
> jurisdiction of the United States or its
> territories and possessions.

The Construction Management Agreement defined "Owners" as "Timothy M. Flannery and Linda J. Morse Trustees of the Timothy M. Flannery Living Trust dated September 21, 2010 and Linda J. Morse and Timothy M. Flannery Trustees of the Linda J. Morse Living Trust dated September 21, 2010." It was signed by Flannery, Morse, and Peter R. Sites, the "Co-Principal/Manager" of ARS.

ThermaSteel contends that the arbitration clause in the Construction Management Agreement compels plaintiffs to submit to arbitration with ThermaSteel. It argues: "Should the Court determine that ThermaSteel is a proper party to this lawsuit and that the pleadings sufficiently assert that ARS acted as ThermaSteel's agent in the subject transaction, then logic dictates that the [Construction Management Agreement] also applies to ThermaSteel." We disagree. In any event, our reasoning with respect to ThermaSteel's Rule 12(b)(2) and 12(b)(6) motions is not based on a finding that "ARS acted as ThermaSteel's agent."

ThermaSteel also urges that "[b]y its express language, the arbitration clause addresses *all* disputes between the parties arising out of the subject matter of the Contract."

It does not.  Instead, the arbitration clause, by its express language, governs "disputes between ARS and Owners, or Owners' assignee."  The clause says nothing more about its scope.

Put simply, ThermaSteel was not a party to the Construction Management Agreement.  Plaintiffs never agreed to submit to arbitration with ThermaSteel, and it would be improper to force them to do so based on this contract.

### IV.

In response to ThermaSteel's motion to dismiss, plaintiffs have filed two motions of their own:  a motion to strike the Construction Management Agreement between plaintiffs and ARS from the motion to dismiss on the ground that it is "impertinent," and a motion for sanctions against ThermaSteel pursuant to Rule 11 of the Federal Rules of Civil Procedure in connection with the purportedly frivolous defenses asserted in the motion to dismiss.  Both of plaintiffs' motions will be denied.